Second case of the day, United States v. Harden. Just wait one second. Mr. Griffiths. Good morning, your honors. May it please the court. My name is Carson Griffiths and I represent the defendant, Donald Harden. I'd like to focus my argument today on the death result sentencing enhancement, and in particular three issues. First, the government's proof of actual causation, the jury instruction and the absence of any mention of reasonable foreseeability in that instruction, and third, the government's misstatements during closing argument. Turning to the first argument, the government failed to prove that the heroin distributed by Mr. Harden was the heroin that killed Fred Schneller. In Burge, the Supreme Court stated that the government must prove that the drugs distributed by the defendant are the but-for cause of the decedent's death. But in this case, the evidence proved the contrary, that it was not the but-for cause of Fred Schneller's death. There's no dispute that there was only one delivery of heroin, beginning with Mr. Harden and ending with Fred Schneller on September 4th. The only question at trial was when that delivery occurred. And Schneller's text messages established that that delivery occurred sometime before 5.09 p.m. Actually, that's one way to read the timeline, but there's another way to read the timeline, and so why isn't this just a jury question? You're asking for a ruling as a matter of law that the timeline can only be read in one way. Correct. The text messages demonstrate that Mr. Schneller, at 5.09 p.m., was complaining about the quality of the heroin he had received that day and saying that it was worse than last night's, meaning that he had to have received it that day. And he also said that he had used almost all of it at that point. He wasn't even high at 5.15, and shortly thereafter he said, how about you drop me off another one tonight? All that leads to establish that the only delivery of heroin on September 4th was prior to the first text message at 5.09. What do we make out of the texts from the 7 to 8 o'clock range where he seems to be expecting another delivery from Mr. Peterson? Well, he seems to be expecting another delivery, and then he never receives it. Peterson testified that he did make that delivery and that it was in the evening, right? That's correct, but that's refuted by the fact that Mr. Peterson testified that the delivery was sometime between 7.30 and 8. He wasn't clear as to when the delivery occurred. He could never pinpoint it. And Mr. Schneller continues to – Between 7.30 and 8 is pretty specific. So for your theory, it seems to have to have happened well before 5 o'clock, right? Correct. Mr. Schneller continued to text and call Mr. Peterson until 9 p.m. So even that timeline was incorrect. And Mr. Peterson previously told the police that the delivery was at 5 p.m. So what you're describing is some inconsistencies by drug dealer witnesses, which is about as routine as evidence problems come in this court. Why is this insufficient as a matter of law to prove the causation here? It's insufficient in this case, Your Honor, because there is stipulated to documentary evidence on the one hand versus witnesses with credibility issues and testimony that does not directly conflict with that documentary evidence. But even if this court finds that the evidence was minimally sufficient as to actual causation, it should reverse for a new trial because the jury instruction in this case omitted any mention of reasonable foreseeability or proximate cause. In fact, the instruction told the jury that the government did not have to prove that Mr. Harden knew or should have known that his distribution of heroin was likely to cause death. That is stated in the law because the death results enhancement requires proof of proximate cause or reasonable foreseeability. I've got a couple of questions here. One, if this record doesn't show valid waiver of objections to jury instructions, what would? My second question is I guess about I'm not sure exactly what you think needs to be foreseeable, but why isn't this in essence a form of the kind of liability for consequences that we see in felony murder statutes where you don't have to prove intent to kill, you don't have to prove that you foresaw that somebody was going to be killed in the robbery, but you're still held accountable for the consequences. Correct. I'd like to the first point about waiver. It would arise in a circumstance not like this case where there was no reasonable strategic purpose not to object to the instruction, the faulty instruction. The government alleged in its indictment an element of foreseeability. It was right before counsel and it was before the court. And there was no purpose for counsel to not at least have the instructions conform to the indictment, moreover to the principles of both proximate cause. What does a district judge have to do to get consensus on instructions besides asking at least twice whether the defense has any objections and there were none? Well, the district judge had the indictment before him. He should have conformed the instructions at least to the indictment and to the law, regardless of whether counsel had raised an objection at that point. And counsel's objection was to the instructions as a whole. There was no specific discussion as to the missing foreseeability element. Are you telling us that a district judge to get a valid waiver on instructions has to go through them one by one? No, Your Honor. But in this case where, again, there's an allegation in the indictment that is wholly missing from the instructions and the law clearly establishes a requirement of foreseeability under both Pinkerton. That's not as clear to me, but okay. What law supports that very categorical statement that foreseeability is required? Conspiracy liability principles, Your Honor, including Pinkerton and this Court's decisions in Young and Cruz where you've applied a foreseeability. But I'm talking about the causation element. You're challenging the causation instruction, not the conspiracy instruction. Well, proximate cause and foreseeability under Pinkerton are both foreseeability. I think you're mixing up the concepts. They're separate legal categories. Correct. They're separate legal categories. But one way or the other, the government would have been required to prove reasonable foreseeability, whether it was under Pinkerton. No, that the acts of a co-conspirator were reasonably foreseeable. That's the Pinkerton concept. What we're talking about is causation, that the death resulting must have been reasonably foreseeable. That's your claim here, that the causation instruction was erroneous. I don't want to conflate it with conspiracy doctrine, and your argument does. So I think you need to keep the two separate. What in the law of criminal causation? Well, there are several reasons why. First, in Burrage, the United States Supreme Court strongly suggested that the death results enhancement requires proximate cause. Didn't decide that question. It did not decide that question squarely, Your Honor. However, those are bedrock principles of criminal law, and the Supreme Court made about it to express a statement as to that as you could without actually reaching that question. If that's bedrock, what about felony murder? What about driving while intoxicated causing death or causing serious bodily injury? Well, felony murder is a situation in which the nature of the forcible felony, as a policy decision, all results or all deaths that result from that forcible felony we consider to be foreseeable. Yeah. In this case. Dealing heroin. But dealing heroin, just saying the fact of dealing heroin alone is sufficient to establish reasonable foreseeability, which essentially impose strict liability, which, again, the U.S. Supreme Court has strongly cautioned against doing, especially in a statute that has causation language in it. Mr. Griffiths, you have no support, though, in any other circuit, do you, for that position? With respect to approximate causation? Yeah. No. However, most of those circuit decisions that have been decided after Burrage have simply relied on their pre-Burrage case law without considering the Supreme Court's analysis of causation or the Supreme Court's decision in Paroline where they reaffirmed those causation principles and the necessity of those. Moreover, in Berkholder, Justice Briscoe did dissent and find that the death results enhancement was ambiguous as to the requirement of proximate cause and that the rule of lenity should militate toward a construction that would read into it an element of proximate cause. And this omission is particularly prejudicial in this case because the government's evidence of foreseeability was extremely weak, if not insufficient. Mr. Schnettler did not know Mr. Hardin, and he did not know Mr. Griffiths. Is it your theory, counsel, that the government has to prove that the defendant should have foreseen this particular victim would have suffered from a fatal overdose? No, not this particular victim necessarily. However, it should present some evidence that death would be likely to result. And, in fact, the government tried to do that in this case through the testimony of Brandy Neves Larson when it tried to elicit testimony that she had been warned about this particular batch of heroin that wound up with Mr. Schnettler, but she did not testify in line with their expectations and said that the warning had come about a previous batch of heroin that was not distributed to Mr. Schnettler. So that brings me to my point regarding the closing arguments here, where the government attempted to fill the gap essentially left by its absence of evidence of proximate causation by saying that Mr. Hardin had, in fact, warned Ms. Neves Larson about the September 4th delivery of heroin when that's not the case in the record. She clearly testified that that warning came about a previous batch that was not delivered to her at the Walgreens, and the government emphasized that point quite heavily in its closing argument. So there is other evidence showing why in this case there is a lack of evidence of foreseeability. The government presented no evidence of the heroin's potency or toxicity, which according to Dr. Geis, their expert, are the two factors necessary to determine whether an overdose is likely to occur. And there was other evidence showing it wasn't potent, in fact, between Mr. Schnettler's text message that the heroin had not gotten him high, that Ms. Neves Larson had swallowed 15 times the amount Mr. Schnettler had received and suffered no ill effects from that, that four other individuals on the same day used the same heroin and did not suffer an overdose, and that only a tenth of a gram went to Mr. Schnettler, which is a very small amount of heroin according to the testimony of the other witnesses in this case. Mr. Griffiths, unlike Burrage, this is not a mixed toxicity case, is it? Well, Your Honor, there is some testimony from Dr. Geis that the six men found in Mr. Schnettler's urine could have been consistent with a situation in which Mr. Schnettler had used heroin around 5 p.m., which would align with the text messages. And then he used a different, either morphine or similar morphine metabolite later and overdosed on that. And in Burrage, the question is not only mixed toxicity. It doesn't only apply when the decedent has used more than one type of drug. The Supreme Court stated that the government has to prove that the specific drug distributed by the defendant is the but-for cause. So even if Mr. Schnettler used only heroin on September 4th, the government's evidence would still have to establish that it was the heroin distributed by Mr. Hardin, which it did not in this case. So what's the evidence that he had some other source of heroin? Well, Your Honor, there's evidence excluded about an additional source of heroin. That's addressed in the briefs, but in terms of evidence before the jury suggesting there was some other source, there isn't any, right? Well, Mr. Hardin didn't have the burden of proving the existence of other sources. All he had to do was establish that there was a reasonable doubt as to whether the specific heroin he received was the heroin that the heroin received from Mr. Hardin. It's testimony that he died of heroin, right? Correct. There's testimony he received heroin that had this defendant as its source, and there's no evidence of any other source. Correct. What more is needed? Well, again, in this case, we have a situation where there is clear documentary evidence establishing that that heroin was delivered five hours before the decedent's death, more than five hours before the decedent's death, and the government's own expert said she would be very surprised if Mr. Schnettler, as he said, at 5-15 p.m. had used all that heroin, wasn't even high, and then died more than five hours later. Also, it's important to note that the government not only misstated the evidence with respect to proximate causation in its closing argument, it also misstated its evidence as to actual causation when it said that all the heroin distributed on both September 3rd and September 4th was distributed from Mr. Hardin and it was given to Mr. Schnettler, and they said specifically, what does it matter what time it took place? So the government essentially attempted to nullify the conflicting timeline evidence that established when Schnettler used the heroin and supplement that with evidence that didn't exist about September 3rd heroin being given to Mr. Schnettler, when in fact the evidence was clear that Kyle Peterson said the heroin he gave to Mr. Schnettler on September 3rd did not come from Neves-Larsen, it in fact came from a different source, which goes back to your question, Judge Hamilton, about evidence of other sources, that there were issues here about whether there were other people who were supplying heroin to these individuals and those people weren't named. However, there was clearly reasonable doubt here regarding whether the heroin distributed by Mr. Hardin on September 4th was the heroin that ultimately killed Mr. Schnettler. If proximate cause is required, is that a fact question for the jury or a legal question for the court? The existence, the sufficiency of the evidence of proximate cause, Your Honor? Well, the question, if proximate cause is legal cause, right? Correct. That's ordinarily a question of law? Well, there would have to be some evidence of proximate cause sufficient to present it to the jury, but whether... I'm asking if it should be presented to the jury at all, if proximate cause is a limitation on criminal liability. Yes, it should be presented to the jury that... Why? If it's a question of legal cause? Because... Proximate cause is just a policy-based determination, right? That the consequence is too remote from the defendant's actions to attribute culpability to him. That's how it works in civil law, isn't it? Correct. It can work as a legal question of whether, as a policy reason, we're going to say that this is too removed or too remote. That's how proximate cause works in tort law, right? Right. That's why I'm asking the question, in criminal law, does it work that way, too? Or ought it work that way, if, as you contend, proximate cause is necessary? I'm not sure whether it would work that way in this case, Your Honor, to be frank. However... It's an important question, perhaps something that the Supreme Court didn't want to get into in Burish, which is why it didn't address the question. There were other reasons, too, but... Correct. But in this case, I think, given the nature of the facts and the nature of the indictment alleging reasonable foreseeability, again, legal cause is equated to that. I'm resisting the question, but that's fine. But if it's an element, there are Sixth Amendment requirements to submit it to the jury, right? Correct. If it's... If it is an element of the sentence, it has to be presented to the jury and proved beyond a reasonable doubt. So... The area is fraught with all kinds of doctrinal difficulty. Correct, Your Honor. So, unless this Court has further questions. Is there remaining time for rebuttal? Mr. Koenig. Good morning. May it please the Court. My name is Jonathan Koenig. I appear on behalf of the United States. It's always a little terrifying to take the podium right after one of the judges says that the area is fraught with doctrinal nightmares or whatever it was Judge Seitz said. Not keeping me up at night, but still. We are asking that you affirm the conviction and life sentence for Mr. Hardin because the evidence was sufficient to convict him. There was no instructional error. The judge's evidentiary rulings were within the scope of his discretion, and the prosecutor's remarks during closing did not rise to the level of unfairness required for a reversal. On the sufficiency of the evidence question, opposing counsel really puts all of his eggs in the 5 o'clock basket. He zeroes in on those earlier text message exchanges between Peterson and Schnettler, which we concede are somewhat ambiguous. However, as Judge Seitz noted in her question, the jury was entitled to look at the later text message exchanges in the 7 o'clock hour and marry those up with the testimony of witnesses who were in that chain of distribution on September 4th. As you're well aware, the role of this court is not to freeway the evidence or reassess the credibility of witnesses, but rather to look at all the evidence in the light most favorable to the government and say, is this a rational verdict? Allow me a naive question. Is a tenth of a gram of heroin a fatal dose? Your Honor, I don't know. I'm certainly not an expert in this area. My understanding is that... That's a standard street-level dose. Right? A tenth of a gram, a little foil packet. My general understanding is that people's reactions to even the same heroin can be idiosyncratic and different, so that three people can take the same heroin and not necessarily react in the same way. Was there evidence on that in this particular trial, to those kinds of varying reactions? Because we do have the other folks who took the same batch. We've got Brandy swallowing in the police station. Did I get that right? I think so, Your Honor. I was afraid of that. But swallowing a gram and a half while she's under arrest and not having any apparent ill effects. What do we make of this? And yet, on the other hand, Kyle Peterson saying that he overdosed from the same batch of heroin. I don't believe there was expert testimony that would be useful, would have been useful to the jury or would be useful to this court on appellate review. It wasn't a battle of the experts kind of case in any event. Well, there was expert testimony on the cause of death. I'm sorry? There was expert testimony on the cause of death. Yes. And the approximate time of death. Yes. And as to the specific question about quantity and why people seem to have varying reactions to the same heroin, I don't believe there was any testimony from the medical examiner. She was focused on the results of her autopsy. So it does all come down to the timeline and how to read the timeline. Yes. And I would just point out as well that even the 5 o'clock hour text message exchanges are not unequivocal. They reference a future delivery. He says, I've got something for you, bro, or something like that, implying there's going to be a future delivery. And, again, if Nedekovin and Peterson are to be believed, there was. And it occurred, you know, around dusk, between the 730 to 8 o'clock time frame, relatively specific, and consistent with what the medical examiner said about death occurring within several minutes up to some hours. So I don't have a whole lot more to say about sufficiency of the evidence. The standard is a difficult one for Mr. Hardin to meet, and we submit that it hasn't been met here. The objections to the jury instructions were clearly waived, as we argued in our brief and as Judge Hamilton asked in his question, you know, if this wasn't a waiver, what is a waiver? But, putting that to one side, it doesn't seem to me that the instruction, which hewed pretty closely to the statutory language, could possibly be plain error. If we're having a debate about, you know, proximate cause, legal cause, reasonable foreseeability, if none of that is clear, then how could it possibly have been plain error to give a bare bones instruction? So the indictment includes the phrase reasonably foreseeable, right? Yes, Your Honor. What is it that has to be reasonably foreseeable? Is it the particular victim's death? Is it just the risk of death to users of street heroin? Well, nothing like that. I would argue that that language was surplusage in the indictment. I'm not really clear on why it was put in there. The, you know, if it were something we had to prove, I would submit we proved it with the comment from Mr. Hardin about there being overdose deaths on this heroin. But the reasonable foreseeability is not an element. Hatfield is very clear about that in two or three different ways. The crime of distribution with death resulting is something in this circuit pretty close to strict liability. Judge Posner's opinion in Hatfield gave some hypotheticals where maybe strict liability would be a stretch, but we don't have any interesting or unusual facts that make it problematic here, I would submit. And we would also argue that Burrage doesn't change that part of Hatfield. Burrage spoke to causation, and it didn't say a whole lot. It certainly didn't say that prosecutors are required to prove a certain state of mind as to foreseeability. And again, the post-Burrage decisions, I think the Tenth Circuit one is the one, the Burkholder case that looks at the statutory language, and it's important to note that Congress did not use causation language in this statute. It didn't say cause, it says results from, and for various reasons explained in that opinion, that's more suggestive of strict liability without all the additional requirements that Mr. Hardin would impose. I'm happy to answer any questions that the panel has on the remaining issues. Otherwise, I'm content to rest on our brief. Thank you, Mr. Koenig. Thank you very much, Your Honor. Mr. Griffiths. Thank you, Your Honors. Just briefly. Judge Hamilton, with respect to your question about what needs to be proved as reasonably foreseeable, it would be the death resulting, not the general risk of death. Otherwise, that would transform this statute into a strict liability statute, which again is strongly disfavored in criminal law. And even this court in Hatfield, which counsel referenced, expressed serious misgivings about imposing strict liability via the death results enhancement. So it should be tied to the specific death resulting as well. So the upstream dealer has to know that Schnedler is a customer of one of his downstream dealers? Again, not necessarily. If, say, for instance, the government's warning evidence turned out to be what it thought it would be, and that he had warned Ms. Neebs-Larsen, hey, this heroin is particularly dangerous. Be careful with it. That would be evidence. The dealer has no control over how the user uses the heroin, right? Correct. Somebody can easily give themselves an overdose intentionally, unintentionally, right? And yet the law seems to reach those situations, doesn't it? Yeah, the law seems to reach those. But, again, in this case we're dealing with a statute with specific causation language, and I would disagree with counsel's point regarding the use of causation language here. So how about a statute that says driving while intoxicated carries up to one year in prison, but if death results from the driving while intoxicated, it's up to 10 years? What has to be foreseen or foreseeable? Well, again, driving while intoxicated is like a felony murder situation where there's an inherent risk in every event of driving while intoxicated. Not every sale of heroin or controlled substances involves the risk of death. Isn't that the theory of the statute? No, Your Honor. It's not the theory of the statute because otherwise Congress would have more specifically said use language imposing strict liability for any death. Here they used language that said results from. Correct. Results from implies causation according to Burrage in the United States Supreme Court and in Paroline as well. Causation in fact, yes. Okay. The point is that your argument about proximate causation calls into question a great many criminal statutes. If you're correct, the proximate cause is always required in a statute that's structured this way because many penalties are enhanced if there's a substantial injury caused or a death caused. A simple battery may be enhanced to an aggravated form of battery under a state battery code if death results, even if death wasn't intended. Well, Your Honor, again, also in deciding whether a statute imposes strict liability or not, the severity of the penalty should be taken into account. I'm troubled by the whole phrase strict liability here. The government has to prove intentional distribution beyond a reasonable doubt, correct? Correct. So this isn't strict liability for the crime. This is a variation depending on consequences. Correct. It's strict liability based on whatever consequences happen. And, again, in Burrage, the court emphasized that using the phrase results from, and it again reemphasized that point in Paroline, using the phrase results from implies both actual and proximate cause. Now, again, recognize the fact that they didn't hold that. However, it was, and that's a common principle of criminal law, that proximate cause is necessary. So with respect to the question about whether this would undermine a whole host of criminal law decisions, I don't think so because this is a principle that underlies all criminal law when Congress legislates in the area of criminal law. Moreover, with respect to the argument, or excuse me, with respect to waiver versus forfeiture in this case, it's more appropriate to apply forfeiture here and consider the failure to object to the jury instructions as a plain error. Is the proximate cause requirement of constitutional dimension? Or is it a common law principle that can be varied by Congress? It's a common law principle. However, in this case, the failure to present it to the jury would rise to a constitutional error. Then it would not. We're back to the fraught doctrinal problem here. Nobody's briefed any of this. Correct. Well, moving on from the fraught doctrinal problem, I'd just like to. No, I want you to finish your thought, but you're over your time. Oh, I apologize, Your Honor. No, no, that's all right. Finish your thought. I would just like to emphasize that, again, this does all come down to the timeline, as counsel recognized, and he emphasized the later texts in saying those are not clear as to what was meant. I think read as a whole, and in light of the entire testimony in this case, it's clear when that delivery was, and it was five hours before the decedent died. Thank you very much, Your Honor. Thank you, Mr. Fairness. And thanks also to Mr. Vinson and Ms. Coz for you accepting this appointment and for so ably representing the appellant. And thanks also, Mr. Connally. The case is taken under advisement, and the court will.